WILLIAM P. PHILIPS *v.* R. D. HINES and wife.

33 163
477 820

1. APPEAL: CHANCERY.—The statute requiring bond and security, in case of appeals from the Chancery Court, only applies to appeals from final decrees. The chancellor may, therefore, allow a defendant to appeal, without bond or security, from a decree overruling his demurrer to the complainant's bill. See *Gay* v. *Edwards*, 30 Miss. R. 218.
2. ATTACHMENT: APPEARANCE: WHEN IT MAKES SUIT IN PERSONAM.—If the defendant, in an attachment process, appear and replevy the property attached, the suit will then become a proceeding in personam; but if he only appear and defend the suit, without replevying the property, its original character of a proceeding in rem will be retained.
3. CHANCERY: JURISDICTION OF DISTRICT CHANCERY COURTS.—A District Chancery Court has jurisdiction, in cases of equitable cognizance, whenever the subject-matter of the suit is situated, or the defendant resides in the district in which it is held; and hence, land may be proceeded against, in the district where it is situated, for the purpose of subjecting it to the payment of a debt, notwithstanding the indebtedness alleged to exist did not arise from any dealing in relation to it.
4. CHANCERY: JURISDICTION: FRAUD AND IMPLIED TRUSTS.—Cases of the receipt of money by fraudulent contrivances, were originally the especial subjects of chancery jurisdiction, upon the ground that there was an implied trust on the part of the receiver to return it. Courts of law now afford a remedy in such cases, by allowing the plaintiff to recover, as for money had and received to his use by the defendant, whenever the latter, *ex æquo et bono*, is bound to pay it. But this extension of the legal remedy is no objection to the exercise by a court of equity of its former jurisdiction in such cases.
5. SAME.—If a party fraudulently destroy the title deeds of another, and make a fraudulent sale of the land, and appropriate the proceeds to his own use, he

will be liable, as upon an implied trust, to restore the injured party to his rights, and a court of equity will compel him to do so.

APPEAL from the Middle District Vice-Chancery Court in Yazoo city. Hon. George W. Dougherty, vice-chancellor.

The appellees filed a motion to dismiss the cause, " because the penalty of the appeal bond is only sufficient to cover costs, when it should be in double the amount of the demand sued for."

*R. S. Holt,* for the motion.

*Gibbs* and *Wilkerson,* contra.

HANDY, J., delivered the opinion of the court upon the motion.

The appellees filed this bill in the District Chancery Court at Yazoo city, for the purpose of attaching certain lands in this State belonging to the appellant, a non-resident of this State, in payment of an equitable claim, alleged to be due by the appellant to the appellees. After publication made, the appellant appeared, and filed a general demurrer to the bill, which was overruled, and from that order the appellant prayed and obtained an appeal, upon giving bond in the penalty of two hundred and fifty dollars, conditioned for the payment of costs and damages, &c.

The appellees now move to dismiss the appeal, on the ground, that by the appearance of the defendant, and his making defence to the suit, the proceeding, which at its institution was one in rem, became one in personam, and that no appeal could be taken without the execution of a bond for the amount of the debt in controversy.

We do not consider this position a correct one. The Statute of 1843, Hutch. Code, 819, 820, provides the mode in which property attached shall be replevied, which is by the execution of a bond, with sureties, &c. It also provides that the defendant may appear and defend the suit, without replevying the property attached. And it is the result of these provisions, in reference to well-established legal principles, that if the property be replevied in the mode prescribed, the suit becomes one in personam, but if it be not replevied, and the defendant merely appears and makes defence to the suit, its original character of a proceeding in rem, is retained.

But if the suit had become a proceeding in personam by the appearance and demurrer of the defendant, the bond given would be sufficient to entitle him to his appeal from the order overruling the demurrer, because no right to money or specific property was fixed by the order, and the appeal did not prevent the enforcement of any rights fixed by decree. In the case of *Gray et al.* v. *Edwards,* at the last term, we held that the statute requiring an appeal bond, as a condition precedent to the appeal, did not apply to an appeal from an order overruling a demurrer, and simply requiring the defendant to answer ; and that the condition of the bond prescribed by the statute, " to pay, satisfy, and perform the decree or final order" appealed from, would be entirely inapplicable to the case of a mere interlocutory order, overruling a demurrer and requiring the defendant to answer. It is further held, that though it is the settled practice which is approved of, to require a bond for costs, before granting such appeal, yet the statute has not, in such cases, required a bond as indispensable to the appeal, and it must be presumed that the legislature did not consider that the nature of the case required the security of a bond as a condition to the appeal. Hutch. Code, 858, § 34 ; 859, § 37 ; 871, § 3.

The motion to dismiss the appeal is overruled. ·

Afterwards the cause came on to be heard upon the merits. The facts of the cause are detailed in the opinion of the court.

*Gibbs* and *Wilkerson,* for appellant.

We think it very clear that the Vice-Chancery Court had no jurisdiction of this case. Admitting it to be a case of equitable cognizance, and that it is a case provided by statute for an attachment in chancery, and could be sustained if filed in the Superior Court of Chancery, yet it is not embraced in the jurisdiction-clause of the statute, which provides for the organization of the Vice-Chancery Court of the Middle District. The Act referred to (Acts of 1852, p. 60), in the third section, gives jurisdiction only when the "subject-matter" of the suit is situated within the district, or a party defendant resides in the district. As the bill is against but one, and he alleged to be a non-resident, it makes it necessary only to determine whether the first-mentioned ground for jurisdiction exists.

What is the "subject-matter" of a suit? It is not a legal term, and therefore incapable of a technical definition, and must be construed in its ordinary acceptation. Were it a bill filed for partition of land, to establish the boundaries of land, to redeem a mortgage on land, or to set up a lost deed for land and to have title reinvested, in any such case we might very properly say the land was the "subject-matter" of the suit. It is the thing about which the litigation arises. It is the gravamen and basis of the suit, the leading subject about which the judicial inquiry is to be instituted, and is the main feature in the case. But that is not the case here. The land in this case is not the basis of the suit. It is not the cause or subject of litigation. It is not the primary, but a secondary subject. It is not the principal, it is but the incident. The subject-matter of the suit is an account, a money demand. The existence or non-existence of a debt is the "subject" of litigation. What the debt is to be satisfied out of (if decreed to exist), is merely the incident, and is not the "subject-matter" of the suit. It might afterwards (to test title) become the "subject-matter" of another suit, but is certainly not the "subject-matter" of this suit. 1 J. J. Marsh. 474; 3 J. J. Marsh. 546, 591.

But if we are wrong in this, we insist the bill does not make a case of equitable cognizance, and if not, the court cannot entertain jurisdiction. Complainant's counsel contend it is a case for a court of equity, because the defendant is chargeable as trustee, having received money which is equitably the money of the complainant. It is true, courts of equity will enforce a trust where a party receives money professedly for another. But then there is an express trust. But no case can be found where courts of equity have taken jurisdiction and held a party responsible as receiving money for the use of another, where its receipt is for property sold by him, which was held, claimed, sold, and conveyed as his own.

None of the authorities referred to in the text of Story's Equity, which were referred to by complainant's counsel, disclose a case of this kind. It is always a case of receipt of money by one, professedly for another, or where it is paid by accident or mistake. The case in 7th Johnson Ch. R. 200, was a bill to compel a party to make good a fraudulent misrepresentation, and has no analogy to this case, and in the use of the language quoted, the chancellor does not mean

to state, that courts of equity will take cognizance of every case of fraud, where there is consequential damage, but that the court having the jurisdiction, will grant relief where there is fraud and damage.

If the quotation is to be taken in its most extended sense, courts of equity would have jurisdiction in all cases of fraudulent misrepresentation and concealment, any case of false warranty or fraudulent enactment, in the sale of property, real and personal. Now if this was a suit for the land itself, or a bill filed to perpetuate the possession under a destroyed deed, doubtless a court of equity would have jurisdiction; but that is not the object of the suit. It is a mere money demand. It is but a suit for damages in the destruction of a deed. It is not a bill filed to reinstate the parties to their position before the deed was destroyed, but a money demand for the value of the land; and for this they have a plain unembarrassed remedy at law; and this court has repeatedly recognized the principle, that a party has no remedy in a court of equity, where he has a plain unembarrassed remedy in a court of law. It is upon this principle that courts of equity were established, and have continued to act to this day, and without this principle there is no limit to the conflict of jurisdiction which must arise. If there was a remedy at law at all (of which there can be no question), we do not think an attachment in chancery could be sustained. We think the reasoning in the dissenting opinion of the chief justice, in the case of *Freeman* v. *Guion*, 11 S. & M., is irresistible. And this court, in the case of *Meek* v. *Heard*, 5 Cushm., we think fully sustains the conclusion of the former chief justice, though upon a different ground; for this last case we think makes it necessary to proceed under the Act of 1821, against one residing in another State. The Act of 1821 does not authorize attachments against non-residents. But the bill in this case is filed under the supposed jurisdiction given by the Act of 1822. We think the case of *Meek* v. *Heard* is conclusive for us in this case.

*R. S. Holt*, for appellee.

This cause comes into this court by appeal from the decree of the vice-chancellor, overruling a demurrer to the bill of complaint.

The question discussed and determined in the court below, and presented by the record here, is, whether the facts stated in the

bill make a case proper for equitable relief. We rest the jurisdiction of the Chancery Court on several grounds.

I. The stratagem by which the defendant obtained possession of the deed, his acts in selling the land to one having no notice of its existence, receiving the purchase-money, and destroying the deed, constitute a case of gross and flagitious fraud, a species of wrong which courts of chancery have redressed from the earliest period. 1 Stor. Eq. Jur. sect. 185, 186, 187; 2 Stor. Eq. Jur., sect. 1265; 1 Spence's Eq. 624.

It is true that fraud in destroying title papers is usually redressed by putting the injured party in the same condition, with reference to the property, as if the deeds had not been destroyed. In this case, this form of relief is impossible; but, it surely does not follow from thence that the party offending is beyond the power of a court of equity.

The distinguishing feature in the character of a court of chancery is its power of shaping its decrees to suit every exigency which can arise.

If it cannot, in a case like the present, restore to the party the property of which he has been by fraud deprived, it can indemnify the sufferer by a liberal decree for damages.

" Fraud and damage, coupled together, will entitle the injured party to relief in any court of justice." 7 John. Ch. R. 200; 1 Stor. Eq. Jur. sect. 252, 254.

II. The Chancery Court had jurisdiction of the case, not only on the ground of fraud, but also as a case of trust.

The defendant received the price for which he sold the land of complainants in money, and " cannot, with a clear conscience, retain it." In the view of a court of equity, he holds it upon an implied trust, which is forced upon him *in invitum*, and he may be, by decree, compelled to pay it. 2 Stor. Eq. Jur. sect. 1255.

True it is that courts of law now entertain suits in many cases to recover money had and received by a party, to or for the use of the plaintiff, and which he cannot conscientiously withhold.

But such cases were originally within the exclusive cognizance of courts of chancery, and their jurisdiction has not been taken from them by the enlargement of the jurisdiction exercised by courts of law. 2 Stor. Eq. Jur. sect. 1256, 1257.

Hence, even though the court should be of opinion that complainants have a remedy at law, they have one also in equity. In that view, the case would be one of concurrent jurisdiction.

III. We next insist that complainant is entitled to more than a mere decree for damages. " Cases for relief against spoliation come in a favorable light before courts of equity (*in odium spoliatoris*)," and " the party will receive the same benefit as if the instrument were produced." 1 Stor. Eq. Jur. sect. 254.

This measure of relief, can in the present case only be granted by compelling the defendant to repurchase the property and reconvey it, and, if that is shown to be *impossible*, by obliging him to pay, in the alternative, its present value.

This and this only will be *full relief;* and if it fall heavily on the defendant, he should not be heard to complain of the necessary fruits of his own iniquity.

On these grounds we insist that the decree of the vice-chancellor should be affirmed.

HANDY, J., delivered the opinion of the court.

This is a bill in equity to subject, by way of attachment, certain lands in this State belonging to the defendant, a non-resident, to the payment of a debt, alleged to be due the complainants under the following circumstances.

The bill alleges in substance, that some years ago, the defendant duly executed a deed of gift of certain lands in Yazoo county, to his sister Nancy Anne Charlton, for her life, with remainder in fee to her two children, Louisiana and Nancy, and that the tenant for life and her child Louisiana are both dead, leaving the complainant Nancy, the wife of Hines, their sole heir. That he delivered the deed to his sister, who entered and had possession under it, but that the deed never having been recorded, the defendant fraudulently contrived to obtain possession of it during his sister's lifetime, and destroyed it, intending to destroy all evidence of the title vested by the deed. And afterwards, in the year 1849, sold and conveyed the land to a third person, who purchased without notice, and has paid to the defendant, the purchase-money.

The prayer is, for an account of the money received by the defendant for the sale of the land, and a decree for its payment, with

interest, and subjecting as an attachment in equity the lands of the defendant, which are described as lying in Yazoo county.

The defendant filed a demurrer to the bill, which was overruled, and from that order this appeal is taken.

Two objections are relied on in support of the demurrer.

1st. That the District Chancery Court in which the bill was filed had not jurisdiction.

2d. That a proper case for relief in equity is not shown.

The ground of the first objection is, that the District Chancery Court has jurisdiction only where the subject-matter of the suit is situate, or the defendant resides in the district; and it is insisted, that although the land sought to be attached lies within the district, yet that that cannot be regarded as the subject-matter of the suit. But this position cannot be maintained. The land was the very thing which was sought to be subjected to the decree. It was the means out of which the complainants sought to have specific satisfaction of their debt; and the question was, therefore, directly presented, not only whether the complainants were entitled to recover their debt in consequence of the fraudulent conduct of the defendant, but whether the land described as the property of the defendant, was subject to the payment of the debt; for without the latter, the decree would be nugatory.

Upon the second point, it is said that the demand was purely legal, for damages for the destruction of the deed or for money had and received; and that the complainants had their remedy by attachment at law upon the land.

It may be true that an attachment at law might have been maintained. But it is equally true, that the remedy is clearly recognized by established principles of equity jurisdiction. The bill shows a case of a fraudulent destruction of the title deed of the complainants, and in consequence of that act, a fraudulent sale of the lands, and an appropriation of the avails to the defendant's use. He is therefore liable, as upon an implied trust, to restore the complainants to their rights, and can be compelled by a court of equity to do so, as far as the circumstances of the case will admit of. Cases of the receipt of money by fraudulent contrivances, were originally the especial subjects of chancery jurisdiction, upon the ground of fraud and trust; and it is no objection to the exercise of

that jurisdiction in a case like this, that courts of law have adopted the equitable remedy by which a party is allowed to recover money had and received to his use by another, whenever the defendant, *ex æquo et bono*, is bound to pay it. 2 Story's Eq. Jur. § 1255. The adoption by the courts of law of a remedy especially belonging to chancery jurisdiction, certainly cannot take away the jurisdiction from courts of chancery.

The decree is affirmed, and the defendant below required to answer within sixty days.